### UNITED STATES v. DOWNING et al.
### No. 443.

Circuit Court of Appeals, Second Circuit.
July 17, 1931.

William B. Mahoney, of Buffalo, N. Y., for appellant Downing.

John S. McGovern, of Buffalo, N. Y., for appellant Downey.

Richard H. Templeton, of Buffalo, N. Y. (Justin C. Morgan, of Buffalo, N. Y., of counsel), for the United States.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

Downing and Downey were convicted of conspiring to import from Canada a cargo of intoxicating liquor into the United States at Buffalo. The evidence of the prosecution was that one, Devine, met Downing in Hamilton, Ontario, and agreed with him to bring a thousand cases of ale into the United States. Later he had a telephone talk with Downing, and arranged to have the ale brought in by some one else, as Devine was leaving Buffalo for a time. He thereupon posted a letter to one, Cullen, giving Downing's name and address in Buffalo, and Cullen undertook the job, writing Downing when he would reach Hamilton with his barge to load the ale. He took her to Hamilton, and after some delay received the cargo at Port Colborne, whence he carried it to Buffalo, and delivered it with

the help of Devine, who had returned. Downey helped to load the barge at Port Colborne and to discharge her at Buffalo.

On this evidence Downing argues that there was no proof of any conspiracy within the United States, and that the indictment should have been dismissed. If Downing was in Buffalo when Devine agreed on the telephone to get a substitute, this would alone have been enough. Possibly the evidence is not entirely clear as to where he was at that time, though Devine gave Cullen a Buffalo address. However, when the barge came in, Devine advised Downing at Downing's request, who was then at any rate in Buffalo. But all this is quite beside the point, since it was not necessary that Downing should have come to the United States at all. Conspirators are considered by a fiction as repeating their agreement wherever any part of it is executed. Thus, when Cullen brought the laden barge to Buffalo, and Devine and Downey discharged her, under an arrangement with Downing to that effect, all the parties to the original agreement could be treated as conspiring afresh. Hyde v. U. S., 225 U. S. 347, 32 S. Ct. 793, 56 L. Ed. 1114, Ann. Cas. 1914A, 614. It is true that that case and its companion, Brown v. Elliott, 225 U. S. 392, 32 S. Ct. 812, 56 L. Ed. 1136, both involved the defendant's removal for trial from one part of the United States to another, and conceivably a distinction might be drawn, though not a good one; but Ford v. U. S., 273 U. S. 593, 47 S. Ct. 531, 71 L. Ed. 793, is precisely on all fours with the case at bar and lays all doubts, if any could arise.

Again, it is true that in those cases the indictment laid, and the evidence proved, an overt act within the jurisdiction, and that it was upon this that the court relied. That was not true here, because while the indictment laid overt acts in Buffalo, the proof broke down as to them, being sufficient only as to an overt act laid in Ontario. However, the conspiracy is the crime (Hyde v. Shine, 199 U. S. 62, 25 S. Ct. 760, 50 L. Ed. 90); the overt act is necessary only to show that performance has begun, and it may be laid outside the jurisdiction [Dealy v. U. S., 152 U. S. 539, 547, 14 S. Ct. 680, 38 L. Ed. 545; Chew v. U. S., 9 F.(2d) 346, 353 (C. C. A. 8)]. Since jurisdiction depends upon where the crime is committed, and it is committed wherever any part of the agreement is performed, the act of performance relied upon need not be an overt act laid in the indictment. We can see nothing in Downing's appeal to warrant a reversal.

At the argument Mr. McGovern appeared for Downey and with the consent of the district attorney, adopted Downing's assignments of error. We may assume arguendo that this was permissible, if Downey had appealed. The difficulty is that, so far as appears, he has never appealed at all, and we are without jurisdiction as to him. Indeed, there is in addition no bill of exceptions, which alone could present any of the errors argued. The transcript does indeed contain what purports to be a complete copy of all that took place upon the trial, headed "Defendant's Bill of Exceptions," and the transcript is certified by the clerk as "a full, true and correct transcript of the record," whatever that may mean. But the judge never settled any bill of exceptions, and his certificate is essential to our consideration of what took place upon the trial. Only then does any part of it come into the record. Clune v. U. S., 159 U. S. 590, 593, 16 S. Ct. 125, 40 L. Ed. 269; Metropolitan R. R. Co. v. Columbia, 195 U. S. 322, 330, 332, 25 S. Ct. 28, 49 L. Ed. 219; Reilly v. Beekman, 24 F. (2d) 791 (C. C. A. 2). Indeed, we are equally without power to consider the points raised by Downing, which we have discussed only because it is desirable to show that he has suffered no harm by his failure to conform with the formalities. Our inability is even deeper as to Downey, because of the absence of an appeal.

There is indeed but one point which could in any event be debatable. Downey took the stand and was asked whether he had not already been convicted of violating section 593 (a) of the Tariff Act of 1922 (19 US CA § 496); that is, of introducing goods into the United States by fraudulent practices. He so admitted, and the evidence was competent [Weiner v. U. S., 20 F.(2d) 522 (C. C. A. 3)]; competent indeed even in such jurisdictions as require the impeaching crime to affect the witness' credibility directly. Had the matter rested there, there could have been no doubt; but it did not. The judge charged the jury that they might take the earlier conviction "into account as bearing upon the likelihood of a person who had been engaged in a crime such as he admitted, of again engaging in a similar transaction." This he refused to modify when his notice was called to the error, for of course it was plainly such. Wigmore, § 192.

It is quite true that jurors will often make no distinction between an accused's credibility and his guilt. And indeed, although the law may be justified in refusing

to recognize the inference from the commission of one crime to that of another, most people feel its force, and this is the source of the danger in admitting such evidence for a different purpose. The least courts can do, accepting the rule as authoritative, is to advise the jurors that they should not do exactly what the judge here told them that they might. Nor are we disposed to regard such an admonition as a ritualistic formality, whose disregard we should ignore, except in a very plain case. Some jurors are wilful, some somewhat pathetically docile; it is impossible to say a priori that none will be influenced by an instruction which it is not impossible in practice to observe. Indeed unless we are to abdicate altogether, we may not proceed on the assumption that whatever a judge says, the result will be the same. We are all curiously ignorant of the actual working of the institution to which we so jealously adhere, but so far as any inference is justified, we should not presuppose that all such cautions are a waste of words.

Of course when the guilt of the accused is altogether plain, we can and should disregard such incidents. In the case at bar Downey was connected with the enterprise only by Devine and Cullen. Devine had been an accomplice, though he was not indicted; Cullen was indicted and had pleaded guilty. Downey denied any connection with the transaction. If the matter was open to us, we might hesitate to say that in such a setting it could have made no difference that the judge positively told the jury that they might reason from the accused's former crime to his commission of another. We cannot therefore say that the absence of any appeal and bill of exceptions did no harm. Unfortunately we have no alternative but to dismiss the appeal for the reasons already given.

Judgment affirmed as to Downing.

Appeal dismissed as to Downey.