**UNITED STATES of America,**
**Appellee,**

v.

**Jay B. SMILEY, Appellant.**

**No. 19772.**

United States Court of Appeals,
Eighth Circuit.

April 8, 1970.

S. J. Albracht, Lathrop & Albracht, Omaha, Neb., made argument for appellant and filed brief.

William F. Clayton, U. S. Atty., Sioux Falls, S. D., and R. D. Hurd, Asst. U. S. Atty., filed brief for appellee. Argument was waived by appellee.

Before BLACKMUN, GIBSON and LAY, Circuit Judges.

GIBSON, Circuit Judge.

This is a direct appeal from a judgment entered on a jury verdict finding appellant, Jay B. Smiley, guilty of a violation of 18 U.S.C. § 2314, interstate transportation of stolen goods of a certain value, and two violations of 18 U.S.C. § 2315, sale of stolen goods transported in interstate commerce. Smiley was sentenced to a term of five years in prison on Count I, and five years on Count II, with probation granted on the latter count conditioned upon making restitution to one of the buyers and paying a fine of $2500 on Count III.

Smiley views the evidence as insufficient to support guilty verdicts on any of the three counts. He also contends that a comment by the trial judge invaded the province of the jury and was prejudicial.

According to the testimony of Smiley's co-defendant, James Sanford, the following events occurred. He and Smiley met in Omaha, Nebraska on the evening of Sunday, April 28, 1968, at which time Smiley informed Sanford he had chemicals for sale and requested Sanford's help in disposing of the chemicals. (Sanford, an auctioneer, evidently was familiar with many persons whose businesses required the use of the chemicals Smiley possessed, namely Atrazene and Treflan.) Sanford had several telephone conversations with Smiley the following week during which Sanford acted as a middleman between Smiley and Marvin Swenson, a potential buyer whom Sanford located in Sioux Falls, South Dakota. When final agreement was reached on the terms of sale Smiley informed Sanford he would arrive in Sioux Falls with the chemicals the next day, Wednes-

day, May 1. However, he did not arrive until Thursday, May 2.

During that Thursday Smiley drove the truck containing the chemicals to Swenson's warehouse where Swenson, Sanford and Smiley loaded the Atrazene into Swenson's pickup truck and placed the Treflan in Swenson's warehouse. Swenson then tendered payment to Sanford since Swenson's dealings had all been with Sanford, but Sanford told Swenson to pay Smiley, which he did, in the amount of $6,450 cash. Some chemicals remained unsold and Smiley asked Sanford for further help in disposing of them. Sanford located one Dale Meyer in Wagner, South Dakota. Meyer arranged for George Larsen of the Farmers Co-op in Wagner to purchase the remaining chemicals. Because of some concern by Smiley over the legality of the license plate on his truck, on Thursday night he drove his truck to Brandon, South Dakota where he paid some children to move the remaining chemicals from his truck to a truck Sanford had driven to Brandon. The next morning he and Sanford drove to the Farmers Co-op in Wagner, where, while unloading the chemicals, Smiley was arrested and $6,648 in his possession was seized.

Smiley testified he did not speak with Sanford on Sunday, April 28, but that on Monday Sanford called twice and requested Smiley's assistance at a sale in Sioux Falls. Smiley claims he refused but finally agreed when Sanford called again Tuesday. Smiley further testified that when he arrived in Sioux Falls he picked up a 1957 Chevrolet truck at a truck stop on Interstate route 29 at Sanford's instruction. This truck contained the stolen chemicals. Smiley claims he knew nothing about the chemicals and particularly did not know they were stolen.

Swenson testified he and Sanford had discussed the possible purchase of chemicals by Swenson as early as the middle of April and again the morning of Sunday, April 28. He further testified that all of his financial arrangements and negotiations were made with Sanford. He

also testified Smiley helped unload the chemicals and accepted the $6,450 cash payment for the chemicals.

Dale Meyer testified Sanford called him for assistance in disposing of the rest of the chemicals and as a result Meyer contacted the Farmers Co-op in Wagner, South Dakota where arrangements were made to purchase the remaining chemicals. Meyer testified that all of his financial negotiations were with Sanford. Meyer further testified Smiley and Sanford came to Wagner to Meyer's place of business where the transaction was finalized, but Smiley said virtually nothing. Finally, Meyer testified that while he was on the telephone talking to the Co-op either Sanford or Smiley told him how to spell "Brownley", the name of the payee on the check to be drawn by the Co-op for the chemicals.

It is obvious from this outline of the evidence presented at the trial that the Government met its burden of proof and the evidence was sufficient for the jury to reach a verdict of guilty on all three counts. Any conflict in the testimony was resolved by the jury. Smiley recognizes the rule set out in Herman v. United States, 289 F.2d 362, 367 (5th Cir. 1961), cert. denied, 368 U.S. 897, 82 S.Ct. 174, 7 L.Ed.2d 93 (1961), approving an instruction containing the following:

> " 'Possession in one state of property recently stolen in another state, if not satisfactorily explained, is a circumstance [from] which the jury might reasonably infer and find in the light of surrounding circumstances that the person in possession knew it to be stolen property.' "

And Smiley recognizes the rule in United States v. Pounds, 323 F.2d 419 (3d Cir. 1963) that possession in one state of property recently stolen in another is grounds for the jury to infer interstate transportation of the stolen goods. Pigman v. United States, 407 F.2d 237, 240 (8th Cir. 1969); Harding v. United States, 337 F.2d 254, 257 (8th Cir. 1964).

The Government proved through the testimony of Sanford, (and Smiley himself admitted) that Smiley had possession in South Dakota of the goods stolen in Nebraska and transported and sold under Counts I and II. The Government also proved Smiley's constructive possession of the stolen goods sold under Count III. The Government proved the goods were stolen in Nebraska and this fact is not contested by Smiley.

■ Smiley claims his possession was satisfactorily explained and the potential inferences rebutted. Smiley places great stress on the fact that all negotiations were handled by Sanford and on the conflict in evidence between Sanford and Swenson which places in doubt whether Smiley first contacted Sanford about selling the stolen chemicals or vice versa. This conflict was for the jury's resolution. But even assuming the jury believed Swenson and not Sanford on this point (which the jury was certainly not required to do since it is the jury's prerogative to determine the extent to which any witness is believed), extensive evidence of Smiley's guilt was presented.

Smiley ignores the evidence indicating the extensive conversations he had with Sanford regarding the chemicals, and the evidence indicating he had possession of the chemicals for extended periods of time. He ignores the fact that his explanation—that he did not know the chemicals were stolen, nor did he transport them across state lines and that he went to South Dakota only because Sanford desperately needed Smiley's assistance in South Dakota—seems incredible in light of the fact he performed few tasks once he arrived in South Dakota. Also present is the fact he personally accepted payment for the chemicals transported to and sold in Sioux Falls, and the fact he was at least present at many of the meetings in South Dakota and at both instances of physically transferring the stolen chemicals to the prospective buyers. Sanford's testimony was sufficient to enable the jury to find that Smiley instigated the crimes, but even if they did not believe this, the jury could easily have found that Smiley was well aware of the nature of the transactions in which he was becoming involved with Sanford. Even on a reading of the evidence most favorable to Smiley he appears at the very least to have knowingly assisted Sanford in these crimes. The evidence was thus sufficient for a finding that Smiley was a principal or an aider and abettor in the illegal transportation and sales of these stolen chemicals.

Smiley objects to a comment on the evidence by the trial judge, contending it invaded the province of the jury and was prejudicial. A government witness, Dale Meyer, testified that while on the telephone to the Farmers Co-op he asked Sanford and Smiley, who were sitting at a table together about 30 feet away, how to spell "Brownley" (the payee designated for the stolen chemicals) and one of them, though he was not certain which one, told him. Smiley's attorney moved to strike that testimony and the Court denied the motion saying:

"* * * It obviously was one; he just can't say which one. But even if he can't say which one, obviously the evidence showed that the defendant Smiley was there, so it doesn't make very much difference which one it is that told him how to spell Brownley."

The Court subsequently went on to say:

"Well, he has said that one of them, and he can't say which one said it, but if it was Sanford that said it, rather than the defendant Smiley, obviously Smiley was right there and was at least within hearing distance."

Smiley contends these comments eliminated the prosecution's burden of proving his participation in the third count of the indictment by removing from the jury the question of whether Smiley was within hearing distance of Meyer's question. Smiley contends that this was reversible error since it was the only testimony connecting him to the crime charged in Count III.

■ We do not believe any error was committed. The fact the evidence showed Sanford and Smiley were seated together would be sufficient to enable the jury to find that since one of them was within hearing distance of Meyer's question of how to spell "Brownley" addressed to both Smiley and Sanford, as evidenced by the fact that one of them answered, then both were within hearing distance. Thus, Meyer's testimony was sufficient to enable the jury to find that Smiley was aware of the negotiations regarding the crime charged in Count III. Either Smiley or Sanford responded to the question, and if it were Sanford, Smiley was present and heard it. Both were there to sell the stolen goods and to receive payment. The judge's comment that both were within hearing distance was merely a comment on the evidence, which was not only permissible but also obvious. Quercia v. United States, 289 U.S. 466, 469–470, 53 S.Ct. 698, 77 L.Ed. 1321 (1933); Rowell v. United States, 368 F.2d 957, 960–961 (8th Cir. 1966), cert. denied, 386 U.S. 1009, 87 S.Ct. 1353, 18 L.Ed.2d 438 (1967); Franano v. United States, 310 F.2d 533, 537 (8th Cir. 1962), cert. denied, 373 U.S. 940, 83 S.Ct. 1545, 10 L.Ed.2d 694 (1962).

Judgment affirmed.