UNITED STATES of America,
Plaintiff-Appellee,

v.

Gerald L. BLUCHER,
Defendant-Appellant.

No. 77–1065.

United States Court of Appeals,
Tenth Circuit.

Argued March 17, 1978.

Decided July 31, 1978.

Rehearing Denied Sept. 5, 1978.

Donald J. Sullivan, Cheyenne, Wyo., for defendant-appellant.

Lawrence A. Bobbitt, III, Asst. U. S. Atty., Cheyenne, Wyo. (Toshiro Suyematsu, U. S. Atty., and Frederic C. Reed, Asst. U. S. Atty., Cheyenne, Wyo., on the brief), for plaintiff-appellee.

Before SETH, Chief Judge, and DOYLE and McKAY, Circuit Judges.

McKAY, Circuit Judge.

Dissenting in *Hamling v. United States*, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974), Mr. Justice Brennan expressed the foreboding that:

The 1958 amendments to § 1461 constituted the mailing of obscene matter a continuing offense under 18 U.S.C. § 3237. The practical effect of this amendment—intentionally adopted by Congress for that express purpose—is to permit prosecution "in the Federal district in which [the disseminator] mailed the obscenity, in the Federal district in which the obscenity was received, or in any Federal district through which the obscenity passed while it was on its route through the mails." . . . Under today's "local" standards construction, therefore, the guilt or innocence of distributors of identical materials mailed from the same locale can now turn on the chancy course of transit or place of delivery of the materials. See *United States v. Palladino*, 490 F.2d 499, 503 (CA1 1974) (Coffin, C. J.). National distributors choosing to send their products in interstate travels will be forced to cope with the community standards of every hamlet into which their goods may wander. Be-

cause these variegated standards are impossible to discern, national distributors, fearful of risking the expense and difficulty of defending against prosecution in any of several remote communities, must inevitably be led to retreat to debilitating self-censorship that abridges the First Amendment rights of the people. For it "would tend to restrict the public's access to forms [of sexually oriented materials] which the [United States] could not constitutionally suppress directly   .   .   . a censorship  .  .  . hardly less virulent for being privately administered[, for] [t]hrough it, the distribution of all [sexually oriented materials], both obscene and not obscene, would be impeded." *Smith v. California*, 361 U.S. 147, 154 [80 S.Ct. 215, 4 L.Ed.2d 205] (1959). Thus, the people of many communities will be "protected" far beyond government's constitutional power to deny them access to sexually oriented materials. A construction that has such consequences necessarily renders the constitutionality of amended § 1461 facially suspect under the First Amendment.

*Id.* at 143–45, 94 S.Ct. at 2920–2921 (Brennan, J., dissenting).

The case we have before us today illustrates that the foreboding has turned to reality.[1] The defendant distributor of published materials resided in Oregon, a state where the "community standard" seems more tolerant of varying personal habits than most.[2] The record does not reflect that defendant ever resided, traveled through, or had any business contacts in the

State of Wyoming prior to the time when an Oregon postmaster asked a Wyoming postmaster to use a false name and address to solicit by mail materials distributed by defendant. This communication between postmasters was made for no apparent reason other than a subjective judgment that a Wyoming venire would hold a more restrictive "community standard."[3] Defendant willingly responded to the mail order requests of Wyoming postal officials. On 17 occasions over a three year period, he mailed advertisements giving information where, how, and from whom allegedly obscene materials could be obtained. On three occasions in the same time period he mailed such materials.

Defendant's only contacts with the State of Wyoming were those initiated and pursued by Federal postal authorities in Wyoming. Based solely on these contacts, defendant was indicted on 20 counts of violations of 18 U.S.C. § 1461 (1976) in an action brought in Wyoming Federal District Court. Facing the prospect of prosecution before a Wyoming jury on all 20 counts under Wyoming community standards of obscenity, defendant pleaded guilty to one count and reserved an appeal on the legality of this prosecution. The government dismissed the remaining 19 counts.

On appeal defendant complains that the liberal venue provisions of 18 U.S.C. § 3237 (1976) compounded by the application of local obscenity standards under *Hamling* deprive him of due process. Yet, so long as *Hamling* is the law,[4] publishers and distrib-

---

1. *See United States v. Dost,* 575 F.2d 1303 (10th Cir. 1978), where the same enforcement and venue shopping technique was used to elect New Mexico substantive law over California law on obscenity.

2. For example, Oregon is one of only a handful of states which have decriminalized the possession and use of small quantities of marijuana. 1977 Or.Laws ch. 745, § 54 repealed Or.Rev. Stat. §§ 167.207(3), 167.217, effective July 1, 1978.

3. For example, in contrast to those states which have decriminalized the use of marijua-

na, Wyoming law continues to make possession and use of small quantities of marijuana a criminal offense punishable by imprisonment for not more than 90 days, or a fine of not more than $100, or both. Wyo.Stat. § 35–347.39 (Supp.1975).

4. The majority in *Hamling* expressly rejected the arguments of Justice Brennan, although the question of 18 U.S.C. § 3237 was not directly at issue in that suit brought in the same district from which the nonmailable materials were sent. The majority opinion stated:

  Our Brother Brennan suggests in dissent that in holding that a federal obscenity case

utors everywhere [5] who are willing to fill subscriptions nationwide are subject to the creative zeal of federal enforcement officers who are free both to shop for the venue from which juries with the most restrictive views are likely to be impanelled and to select for prosecution the materials, publishers and distributors which their subjective judgment dictates.

AFFIRMED.

WILLIAM E. DOYLE, Circuit Judge, concurs in the result.

may be tried on local community standards, we do violence both to congressional prerogative and to the Constitution. Both of these arguments are foreclosed by our decision last Term in *United States v. 12 200-ft. Reels of Film, supra* [413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500], that the *Miller* standards [*Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419], including the "contemporary community standards" formulation, applied to federal legislation. The fact that distributors of allegedly obscene materials may be subjected to varying community standards in the various federal judicial districts into which they transmit the materials does not render a federal statute unconstitutional because of the failure of application of uniform national standards of obscenity. Those same distributors may be subjected to such varying degrees of criminal liability in prosecutions by the States for violations of state obscenity statutes; we see no constitutional impediment to a similar rule for federal prosecutions.

418 U.S. at 106, 94 S.Ct. at 2902. In addition to *Hamling*, lower federal courts that have spoken to this issue have unanimously concluded that it is both permissible and logical to try a defendant in the district to which he allegedly mailed obscene materials. *United States v. Slepicoff*, 524 F.2d 1244, 1249 (5th Cir. 1975), *cert. denied*, 425 U.S. 998, 96 S.Ct. 2215, 48 L.Ed.2d 824 (1976); *United States v. Various Articles of Obscene Merchandise*, 433 F.Supp. 1132, 1137 (S.D.N.Y.1976) (dicta), *rev'd*, 562 F.2d 185 (2d Cir. 1977), *cert. denied*, —— U.S. ——, 98 S.Ct. 2831, 56 L.Ed.2d 776 (1978) (three Justices dissenting); *United States v. Elkins*, 396 F.Supp. 314 (C.D.Cal.1975), *rev'd on other grounds*, 556 F.2d 978 (9th Cir. 1977).

5. This, of course, includes such widely acclaimed magazines as National Geographic Magazine with its graphic illustrations of stories about primitive marriage and adoption rites. *See, e. g.,* 141 National Geographic Magazine 388–90, 396 (1972). The editors regularly receive letters from readers suggesting that the reader's notion of community standards for acceptable sexual depiction has been offended. Telephone interview with a staff member, Research and Correspondence Section, National Geographic Society, Wash., D.C. (July 6, 1978).