**UNITED STATES of America, Plaintiff,**

v.

**Harry Virgil MOHNEY, Gary Paul Andre, Stanley Marks, Garth Quinn, David Grama, Melvin Daniel Hanners, William Pinkus and Arthur Randall Sanders, Jr., Defendants.**

Crim. No. 77–1291.

United States District Court, D. Hawaii.

Sept. 20, 1979.

---

Walter M. Heen, U. S. Atty., Honolulu, Hawaii, William J. Richards, Asst. U. S. Atty., Eastern District of Michigan, James K. Robinson, U. S. Atty., Detroit, Mich., for plaintiff.

Robert E. Smith, Atlanta, Ga., for defendants Harry Virgil Mohney, Stanley Marks and Garth Quinn.

Larry G. Sharp, Flint, Mich., for defendant Gary Paul Andre.

Michael Y. Sandborn, Lansing, Mich., for defendant David Grama.

Arthur M. Schwartz, Denver, Colo., for defendant Melvin Daniel Hanners.

Bernard A. Berkman, Cleveland, Ohio, for defendant William Pinkus.

Glenn Zell, Atlanta, Ga., for defendant Arthur Randall Sanders, Jr.

## MEMORANDUM DECISION

SAMUEL P. KING, Chief Judge.

This decision memorializes one more step in the tortuous path this case has followed since its inception. On May 14, 1976, ten persons were indicted in the Eastern District of Michigan. Five were charged with conspiring to bring obscene material into the United States; conspiring to knowingly use common carriers for interstate transportation of obscene material; and conspiring to knowingly transport obscene material in interstate commerce for the purpose of sale and distribution. Six other counts of the indictment charged various defendants with violating 18 U.S.C. §§ 2, 1462 (1976), by knowingly using a common carrier for interstate carriage of obscene material. All the counts charged that the obscene materials were placed in interstate commerce in the Eastern District of Michigan. The destinations were Philadelphia, Pennsylvania; Studio City, California; Atlanta, Georgia; Honolulu, Hawaii; Denver, Colorado; and Providence, Rhode Island. On June 9, 1977, a superseding indictment was returned against nine of the defendants.[1] That indictment was essentially the same as the first, except the count involving shipment to Philadelphia was dropped.

On August 18, 1976, defendant Bloss, charged only with the substantive count involving shipment to Hawaii, moved pursuant to Rule 21 of the Federal Rules of Criminal Procedure that his case be severed and transferred to Hawaii. When the motion was argued, the remaining defendants moved to transfer the entire case to the District of Hawaii "in the interests of justice and for the convenience of the parties." The magistrate in Michigan who heard the motions, came to the conclusion that on the substantive counts the applicable community standards to be used in determining whether the materials were obscene were those of the recipient communities. Therefore, on the count charging shipment to Hawaii, Hawaii standards were to be used. Similarly with the counts charging shipment to California, Georgia, Colorado, and Rhode Island. The magistrate believed that Michigan community standards were totally inapplicable. He recommended that the entire case; lock, stock, and barrel—with its five different obscenity standards—be transferred to the District of Hawaii.

None of the parties objected to the magistrate's recommendations, and hence on November 3, 1977 Judge Harvey transferred the entire case to the District of Hawaii pursuant to Rule 21(b). Meanwhile, back in the Sixth Circuit, the government brought a mandamus action against Judge Harvey, requesting that his order of transfer be vacated. The Sixth Circuit, declining to rule on the propriety of the transfer, held that the government was barred from relief because it had failed to object to the magistrate's findings. *Mohney, et al.* was in Hawaii to stay—at least temporarily.

After the case came to this Court, the situation deteriorated. On October 10, 1978, defendant Bloss entered into a plea agreement with the government, whereby he agreed to plead guilty to receiving a firearm which had been shipped in interstate commerce, while under indictment for a felony, 18 U.S.C. § 922(h)(1) (1976) (Bloss had received some guns to be used in a shooting gallery), and the government in return agreed to dismiss the count of the indictment charging Bloss in connection with shipping obscene materials to Hawaii. When Bloss was sentenced, the government carried out its agreement and dropped the Hawaii count of the indictment entirely. At that point there was no longer any connection at all between *United States v. Mohney, et al.* and the State of Hawaii. Coincidentally, shortly after it dropped the Hawaii count, the government filed a paper entitled: "Suggestion of the government for retransfer of case to the United States District Court for the Eastern District of Michigan." All remaining defendants opposed this motion, and requested that the case proceed to trial in the District of Hawaii. At that point, this Court had three

---

1. Defendant Dennis Pearl Klinger was not indicted in the superseding indictment.

options: (1) try the case; (2) retransfer the case; (3) dismiss the indictment.

## I. THIS COURT'S POWER TO TRY THE CASE

 The government argues in its "Suggestion for retransfer" that this Court no longer has the power to hear this case because venue is no longer proper. They cite art. III, § 2, cl. 3 of the Constitution: "The Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed . . . ." The government contends that since the Hawaii count in the indictment was dropped, the case may no longer be heard in Hawaii. They also cite Rule 18 of the Federal Rules of Criminal Procedure,[2] but Rule 18 is tempered by Rule 21 which provides that upon motion of the defendant, and for good cause shown, cases may be transferred to *any* district. The government acknowledges this, but nonetheless claims that since the basis for the Rule 21 transfer has disappeared, this Court's power to hear the case also vanishes. That is faulty reasoning. The 1966 Advisory Committee Note to Rule 21 states:

> The original rule limited change of venue for reasons other than prejudice in the district to those cases where venue existed in more than one district. Upon occasion, however, convenience of the parties and witnesses and the interest of justice would best be served by trial in a district in which no part of the offense was committed.

It seems *a fortiori* that if a case can be transferred to a district where no part of an offense was committed, it can be heard in a district which, after the transfer, becomes a place where no part of the offense was committed. The government's dismissal of the Hawaii count in the indictment may negative the only *rationale* for this Court hearing the case, but it cannot remove the power of the Court to do so. Moore states:

The constitutional requirement for venue in the district where the offense is committed is implemented by Rule 18. Where a defendant moves for change of venue under Rule 21(a) or (b), he waives his constitutional privilege, as well as his "statutory" right under Rule 18, thus giving the court power to transfer the case to a nonvenue district.

8A Moore's Federal Practice ¶ 21.02 at 21-4 (2d ed. 1978). The Rule 18 right belongs to the defendants, and they waived it when they all joined in Bloss' Rule 21 motion.[3] After transfer the government cannot invoke the provisions of Rule 18, regardless of the change in circumstances. Thus, this Court clearly has the power to try *Mohney, et al.*, but the real question is, should it do so?

## II. APPLICABLE OBSCENITY STANDARDS

If this Court were to try this case, very quickly would come the question, obscene or not obscene, yes or no, why or why not? In order to answer this, a jury would have to be instructed as to what standards to use in determining whether or not something is obscene. In this case, would the jury use the local standards of the Eastern District of Michigan on all counts, or would it have to apply the separate standards of Studio City, California; Providence, Rhode Island; Denver, Colorado; and Atlanta, Georgia? As noted earlier, the magistrate in Michigan believed the recipient community's standards were the applicable ones. As this case has developed, however, the Court does not feel bound by the magistrate's recommendations.

The magistrate found that one of the major factors underlying the Supreme Court's decision in *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973)

---

2. "Except as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed. The court shall fix the place of trial within the district with due regard to the convenience of the defendant and the witnesses."

3. *See, e. g., United States v. Jercha*, 458 F.2d 1340, 1341 (9th Cir. 1972); *United States v. Marcello*, 423 F.2d 933, 1005 (5th Cir.), *cert. denied*, 398 U.S. 959, 90 S.Ct. 2172, 26 L.Ed.2d 543 (1970); *Jones v. Gasch*, 131 U.S.App.D.C. 254, 404 F.2d 1231 (D.C.Cir.1967).

was that with a national standard for judging obscenity, the community where the materials are distributed has a standard of morality other than its own foisted upon it. "It is neither realistic nor constitutionally sound to read the First Amendment as requiring that the people of Maine or Mississippi accept public depiction of conduct found tolerable in Las Vegas, or New York City." 413 U.S. at 32, 93 S.Ct. at 2619.[4] In addition, the community from which the material is shipped, but in which it is not distributed, has no great societal interest in determining whether or not that material is obscene. The magistrate's view, while obviously logical, does not appear to have the support of the case law, such as it is, or the legislative intent underlying the obscenity statutes.

In *Hamling v. United States*, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974), the Supreme Court clarified *Miller*, and held that even in federal obscenity cases, local rather than national standards were to be used. "The fact that distributors of allegedly obscene materials may be subjected to varying community standards in the various federal judicial districts into which they transmit the materials does not render a federal statute unconstitutional because of the failure of application of uniform national standards of obscenity." 418 U.S. at 106, 94 S.Ct. at 2902. The *Hamling* court did not indicate, however, which standard would be used if the government had the choice of bringing the action in either the district of transmission or the district of receipt, and chose to bring it in the district of transmission.

■ In 1958, the obscenity statutes involved in this case were amended to allow prosecution both in the district of transmission and the district of receipt. The reason for the amendments was that the federal courts had previously held venue was proper only in the district of transmission. During the course of the debate on the amendments, Representative Keating stated:

> The interpretation given by the courts has, to all intents and purposes, nullified previous Congressional action. They have said a promoter can be prosecuted only where he puts the material into the mail. As a result the community most affected by the crime, that is, the one where the stuff is circulated, has no opportunity whatsoever to protect itself.
>
> The bill before us, is intended to overcome the effect of judicial interpretation and thereby to increase materially the effectiveness of the present statute. Its purpose is to make abundantly clear that violators can be prosecuted either at the place of mailing, or at the place of address or delivery . . . . .

104 Cong.Rec 8991 (1958).

Though at the time of these amendments there was no local obscenity standards rule *per se*, it does seem clear that if the government has the choice of where to bring the action (and clearly it has been given the go ahead to forum shop both by Congress and the Supreme Court), the applicable standards should be those of the community where the action is brought. It would be senseless to allow the community where the materials were transmitted to make the obscenity determination, but force that community to use the standards of the community where the materials were distributed. Not only would that be illogical, but it would render the clear choice given the government as to where to bring the action completely illusory.

In a case whose tortured procedural history makes *Mohney, et al.*'s look simple and uncomplicated,[5] the Eighth Circuit con-

---

4. The Court in *Miller* also found that a national standard meant that because of the caution of distributors, communities with liberal views might be denied materials that the country in general found obscene. "The use of 'national' standards . . . necessarily implies that materials found tolerable some places . . . will nevertheless be unavailable where they are

acceptable." 413 U.S. at 32 n. 13, 93 S.Ct. at 2619 n. 13.

5. In 1974, six defendants were indicted in the Northern District of Iowa for conspiring to violate, and for violating two postal obscenity statutes. The defendants had mailed the materials in question from California to Iowa. The Iowa court, pursuant to Rule 21, transferred the case

sidered the issue facing this Court. Allegedly obscene materials were mailed from Iowa to California. The court determined that the local standards rule developed in *Miller* and *Hamling* "coupled with the decision of the government to bring this indictment in Iowa, mandates that the obscenity vel non of these materials must be determined according to the Iowa contemporary community standards." *United States v. McManus*, 535 F.2d 460, 464 (8th Cir. 1976), *cert. denied*, 429 U.S. 1052, 97 S.Ct. 766, 50 L.Ed.2d 769 (1977) (emphasis added). The court also noted that the legislative history of the amendments to the obscenity statutes clearly placed with the government the choice as to where to prosecute the action.

■ This Court has been unable to locate a case dealing with the precise question in this case—whether the community standards of the district of transmission may be used when the case is originally brought in that district and then transferred.[6] Nevertheless, the principle is the same as in the *McManus* case discussed above—the applicable standards are those of the district where the government chose to originally bring suit. In this case, that district was the Eastern District of Michigan.

## III. FEASIBILITY OF TRYING THE CASE IN HAWAII

■ Aside from the fact that Hawaii is an obviously inconvenient forum for trying this case—no witnesses live here, no defend-

ants reside here, no obscene materials were shipped here—there is the question of whether a jury from the District of Hawaii can determine and apply the local community standards of the Eastern District of Michigan. The Supreme Court in *Hamling* discussed how jurors are to determine whether or not something is obscene:

> The result of the *Miller* cases, therefore, as a matter of constitutional law and federal statutory construction, is to permit a juror sitting in obscenity cases to draw on knowledge of the community or vicinage from which he comes in deciding what conclusion "the average person, applying contemporary community standards" would reach in a given case.

418 U.S. at 105, 94 S.Ct. at 2901. In *United States v. Elkins*, 396 F.Supp. 314 (C.D.Cal. 1975), discussed earlier in note 5, Judge Crary had to decide whether to keep a case in which a California jury would have been required to determine the local community standards of Iowa. The government offered to prove those standards by expert testimony, but Judge Crary rejected this on the ground that a necessary component of the *Miller-Hamling* test was that individual jurors would draw on their own knowledge of local community standards in determining what was obscene and what was not.[7] This Court agrees completely. Inherent in *Miller* and *Hamling* is the idea that jurors are drawing on personal knowledge of their own community. While expert opinions

6. The reason for this is that the issue is not likely to come up. In those cases where the indictment is brought in the district of transmission, the defendants will probably want the case to be tried there. It is likely that that district—probably a large city—has more liberal attitudes than smaller recipient communities.

7. Judge Crary also stated: "The Court concludes that a jury selected from the residents of this District could not determine the contemporary community standards of the Northern District of Iowa by reason of its members not possessing the knowledge of a juror in Iowa of the community standards in which the Iowa juror resides, necessary in deciding what conclusion the average person, applying the contemporary community standards of Iowa, would reach based on the facts adduced in the instant case." 396 F.Supp. at 318.

to the Central District of California. The court there concluded (1) that the applicable local standards were those of the Northern District of Iowa, and (2) that it did not want to try the case in California. The California court, therefore, dismissed the indictment. *United States v. Elkins*, 396 F.Supp. 314 (C.D.Cal.1975). The government promptly reindicted the defendants in Iowa, and the defendants just as promptly moved to transfer the case back to California. Again, the Iowa court transferred the case to California. Had not the Eighth Circuit come to the rescue, this case, to paraphrase the Kingston Trio "may have ridden forever, 'neath the federal court system—the case that always returned." However, the Eighth Circuit granted the government's petition for mandamus, and ordered the Iowa district court to hear the case.

may be relevant, jurors are completely free to disregard all expert testimony. If jurors cannot draw on personal knowledge, the idea of local community standards is a *totally* useless concept. A jury from the District of Hawaii cannot determine the community standards of the Eastern District of Michigan.

Perhaps the upshot of this is that defendants in federal obscenity cases can no longer have their cases transferred to another district.[8] This idea certainly conflicts with both the spirit and language of Rule 21, but so long as the government has the right to choose its own forum, and so long as local community standards are the measuring stick, that's the way it is. Another problem is that multi-count, multi-city, multi-defendant cases such as this one can be conveniently tried as one case only in the district of transmission. That would be the only place where a jury would be able to apply local community standards to every count in the indictment. Yet, that leaves the problem discussed earlier in this opinion; that the recipient communities—those affected the most by the obscene materials—would have no say in determining whether the materials were obscene according to their own standards.[9] Perhaps this case is *sui generis* in that the district of transmission may have stricter standards than the districts of distribution. In the usual case, transmission is probably from a large city such as New York or Los Angeles, and in that situation the government might prefer the case to be heard in the smaller recipient cities, while the defendants would probably prefer to be tried in the larger transmission city. In any case, given (1) a desire for single rather than multiple trials, (2) the government's ability to forum shop, and (3) the concept of local community standards; it is apparent that the present system is unworkable. Either a national obscenity standard should be used for these types of

cases, or else the government should again be limited to bringing them in the district of transmission (unless there is only one district where the materials are distributed), with no venue changes permitted except in the most extraordinary circumstances. This Court concludes that *United States v. Mohney, et al.* cannot be tried in the District of Hawaii.

## IV. DISMISS OR RETRANSFER

This Court is left with two alternatives—transfer the case back to Michigan, or dismiss the indictment without prejudice. There is some question as to whether this Court has the power to retransfer a case transferred pursuant to Rule 21. "It has been said that the transferee district court may not question the propriety of the transfer order. But retransfer may be appropriate where the court determines that the order is so manifestly improper as to subject its subsequent judgment to reversal." 8A Moore's Federal Practice ¶ 21.04[3] at 21–23 (2d ed. 1978) (footnotes omitted). Moore also states: "Retransfer might be appropriate if subsequent to transfer there is an unusual change of circumstances. . . . ." *Id.* at note 23. Wright's position is that "any case is now transferable under the rule, and it is clear that it is not for the transferee court to consider whether the transferor court properly exercised its discretion in ordering the transfer." 1 C. Wright, Federal Practice and Procedure § 346, at 646 (1969) (footnotes omitted).

Here, circumstances have significantly changed since the time of transfer—there is no longer any connection between this case and Hawaii—though it is also this Court's view that the original transfer of the *entire* case was inappropriate. All the defendants, however, oppose retransfer, and claim that transfer is strictly the prerogative of the defendant and not the government.

8. *See United States v. McManus*, 535 F.2d at 464.

9. Of course the government could elect to try each count separately in the various districts where the materials are distributed. This,

however, would hardly serve the goal of judicial economy, and in addition could subject individual defendants to multiple trials for what would be, in essence, all part of the same criminal enterprise.

**428**

In *United States v. Abbott Laboratories*, 505 F.2d 565, 572 (4th Cir. 1974), *cert. denied*, 420 U.S. 990, 95 S.Ct. 1424, 43 L.Ed.2d 67 (1975), the court stated: "Because of a defendant's sixth amendment right to be tried in the district where the crime was allegedly committed, Rule 21, F.R.Cr.P., conditions a change of venue, *inter alia*, upon the defendant's request therefor. Absent the request, a change of venue may not be ordered, . . . ." A similar comment was made by Chief Justice Warren, dissenting in *Parr v. United States*, 351 U.S. 513, 523, 76 S.Ct. 912, 918, 100 L.Ed. 1377 (1956): "Rule 21 of the Federal Rules of Criminal Procedure allows defendants to obtain changes of venue in order to get fair and impartial trial. No rule or statute grants such a privilege to the United States." Nevertheless, there have been cases where retransfer was accomplished on the court's own motion.[10] This Court believes it has the power to retransfer this case, *sua sponte*, due to changed circumstances and the doctrine of *forum non conveniens*. It is neither logical nor expeditious for the only remedy in a case such as this to be dismissal. However, if this Court were to retransfer, the court in Michigan might refuse to accept the case or might even transfer it right back. Even if that court did accept the case, the defendants, after conviction, might argue on appeal that this Court lacked the power to retransfer. That could only add to the confusion that this lawsuit is already mired in. Perhaps the solution is to have a provision in Rule 21 providing for retransfer in extraordinary circumstances such as those presented by this case. However, that is for the future and not the present. This Court considers that the simplest course is to dismiss the indictment, *sua sponte*.

On its own motion, for the reasons stated above, on August 17, 1979, this Court ordered that the Indictment pending herein be dismissed.

**10.** *See, e. g., Auerbach v. United States*, 347 F.2d 742 (5th Cir. 1965) (over a vigorous dissent, the court refused to review the propriety of the district court's retransfer); *United States v. Choate*, 276 F.2d 724 (5th Cir. 1960) (the court held that the original transfer was "void", and hence technically retransfer was not necessary). However, these cases were decided before the change in Rule 21 permitting transfer to any district. Thus, before the rule change, transferee courts might have felt that they had no constitutional jurisdiction to hear a particular transferred case. Under the amended rule, however, that is never a problem, so the present question of the propriety of retransfer is a different one entirely.