**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Joseph PERAINO and Plymouth Distributors, Inc., Defendants-Appellants.**

**No. 79–5081.**

United States Court of Appeals, Sixth Circuit.

Argued Oct. 21, 1980.

Decided April 6, 1981.

As Amended April 24, 1981.

Henry J. Boitel, New York City, for defendants-appellants.

W. J. Michael Cody, U. S. Atty., Robert M. Williams, Jr., Memphis, Tenn., for plaintiff-appellee.

Before WEICK, LIVELY and KENNEDY, Circuit Judges.

LIVELY, Circuit Judge.

The appellants, along with nine other defendants, were indicted and tried by a jury at Memphis in the Western District of Tennessee for conspiracy to violate federal obscenity statutes, 18 U.S.C. § 1462 and § 1465, by transporting the film "Deep Throat" in interstate commerce. At a joint trial the defendant Joseph Peraino was found guilty, sentenced to 18 months with all but 6 months suspended and fined $10,-000; Plymouth Distributors, Inc. was fined $8,000. Five other defendants were found

guilty, three were acquitted by the jury and the charges against one were dismissed when the jury was unable to agree as to him.

The appeals of the seven defendants convicted by the jury were consolidated and oral arguments were heard from all counsel. In a decision filed today the court unanimously affirmed the convictions of all but Joseph Peraino and Plymouth Distributors, Inc. *United States v. Battista et al.,* 646 F.2d 237 (1981). Joseph Peraino (hereinafter Peraino) and Plymouth Distributors, Inc. (hereinafter Plymouth) raised an issue common only to themselves, and the panel determined that a separate opinion is required to deal with this issue.

The film was shown in Memphis in February 1974 and the first indictment was returned there on August 15, 1974. Peraino and Plymouth were not named in the indictment. However, in a superseding indictment returned on June 13, 1975, these defendants were named, along with others, as members of a conspiracy to violate 18 U.S.C. § 1462 (transportation of obscene matter) and 18 U.S.C. § 1465 (transportation of obscene matter for distribution). The indictment alleged overt acts in Memphis only in connection with the film being shown there, none later than March 1974, and later overt acts elsewhere as part of a national conspiracy to transport "Deep Throat" interstate up to the time of the indictment.

There was no evidence linking Peraino and Plymouth with any of the co-conspirators or with the film itself until at least eight months after the Memphis showing. In October 1974 Peraino was seen in Florida with some of the co-conspirators. In November 1974 he received three $275 checks, not shown to be connected with "Deep Throat," from the New Jersey office of the film distributor which handled other films as well as "Deep Throat." The evidence showed that Peraino took over the distribution of the film in December 1974 and moved the distribution center from Florida to New Jersey. He formed Plymouth for

the purpose of distributing the film in Pennsylvania, Connecticut, New Jersey and Maine. There was evidence he did not intend to distribute the film in communities where it would offend or cause legal problems. So far as the evidence shows, Peraino and Plymouth had no relationship with the prior distributors of the film other than that in December 1974 they employed two unindicted co-conspirators who had been engaged in the earlier Memphis showing and retained a lawyer who had been involved in production of the film. There was no evidence that the film was ever transported to or through the Western District of Tennessee or that any overt acts took place there after Peraino and Plymouth took over distribution. There was no evidence that the community standards of any community to which they did transport the movie were violated.

Peraino and Plymouth assert that they were denied First Amendment and due process rights by being required to stand trial in the Western District of Tennessee. They contend that there is no venue "where, during the course of a particular defendant's actual participation in the alleged conspiracy, it was not an objective of the conspiracy to distribute the allegedly obscene material within the Federal district." They argue that "expression" may be suppressed as obscene only in those places where it is found so under local community standards. Since these standards vary from place to place, due process is violated by enforcing a venue provision which has the effect of basing conspiracy convictions under §§ 1462 and 1465 on the standards of a community with which the defendant has had no contact. The government responds that under settled conspiracy law each person who joins is held responsible for prior acts of all conspirators in furtherance of the purpose of the conspiracy and that venue is properly laid in the district of any overt act.

Though Congress apparently recognized that obscenity posed a national problem in enacting 18 U.S.C. §§ 1461–1465, the Supreme Court has held that there is no national standard by which material can be judged to determine whether it is obscene. *Miller v. California*, 413 U.S. 15, 30–33, 93 S.Ct. 2607, 2618–19, 37 L.Ed.2d 419 (1973). "To require a State to structure obscenity proceedings around evidence of a *national* 'community standard' would be an exercise in futility." *Id.* at 30, 93 S.Ct. at 2618 (emphasis in original). Instead, even in federal prosecutions for transporting allegedly obscene materials in interstate commerce, the material must be tested by "contemporary community standards." *Hamling v. United States*, 418 U.S. 87, 104–07, 94 S.Ct. 2887, 2900–2902, 41 L.Ed.2d 590 (1974). As a practical matter this becomes the standard of the "community" from which the jury is drawn.

> [T]he prosecution need not as a matter of constitutional law produce "expert" witnesses to testify as to the obscenity of the materials .... A juror is entitled to draw on his *own* knowledge of the views of the average person in the community or vicinage from which he comes for making the required determination ....

*Id.* at 104, 94 S.Ct. at 2900 (emphasis added).

> Since this case was tried in the Southern District of California, and presumably jurors from throughout that district were available to serve on the panel which tried petitioners, it would be the standards of that "community" upon which the jurors would draw.

*Id.* at 105–106, 94 S.Ct. at 2901–02. As Justice Brennan explained, "It may be that the Court's unarticulated assumption is that jurors instructed to apply 'national' standards will inevitably apply the standards of their local community, because national standards are simply 'unascertainable.' " *Id.* at 151 n.5, 94 S.Ct. at 2924 n.5 (dissenting opinion). That community standards will vary throughout the nation may be said to serve the principles of the First Amendment.

> The use of "national" standards, however, necessarily implies that materials found tolerable in some places, but not under "national" criteria, will nevertheless be

unavailable where they are acceptable. Thus, in terms of danger to free expression, the potential for suppression seems at least as great in the application of a single nationwide standard as in allowing distribution in accordance with local tastes, a point which Mr. Justice Harlan often emphasized.

*Miller, supra,* 413 U.S. at 32 n.13, 93 S.Ct. at 2619 n.13. "People in different States vary in their tastes and attitudes, and this diversity is not to be strangled by the absolutism of imposed uniformity." *Id.* at 33, 93 S.Ct. at 2619.

Venue for federal obscenity prosecutions lies "in any district from, through, or into which" the allegedly obscene material moves, according to 18 U.S.C. § 3237. This may result in prosecutions of persons in a community to which they have sent material which is obscene under that community's standards though the community from which it is sent would tolerate the same material. *See United States v. Blucher,* 581 F.2d 244 (10th Cir. 1978), *vacated,* 439 U.S. 1061, 99 S.Ct. 823, 59 L.Ed.2d 27 (1979).

▮ When this liberal venue rule is applied in a prosecution for conspiracy to violate the federal obscenity laws, as in the present case, a constitutional issue is presented. The material is entitled to First Amendment protection except where it violates community standards. Here, in addition to distributing "Deep Throat" in Memphis, where it was illegal, the conspirators were engaged in its distribution in other communities where it was not shown to be illegal, and therefore is presumed to be legal. Venue in an obscenity conspiracy case must be based on the allegedly obscene material once being present in the district, 18 U.S.C. § 3237, and either on the conspiracy being formed there or on an overt act taking place there, *see Brown v. Elliott,* 225 U.S. 392, 400, 32 S.Ct. 812, 815, 56 L.Ed. 1136 (1912). A person who enters into an agreement to distribute the material after the venue-setting act is not constitutionally subject to prosecution in the district of venue in the absence of some subsequent act or agreement related to the district of venue or another district in which the material is found to be obscene. One who has no connection with the district of venue at the time of the venue-setting act may not be convicted there for subsequently transporting the materials into other communities whose standards were not established. Merely joining the conspirators in their lawful distribution efforts in other communities after the film was no longer being shown in Memphis does not evidence intent to further or advance the illegal purpose of the conspiracy to ship the film into Memphis. Absent any evidence of adherence to the criminal purposes of the conspiracy, defendants Joseph Peraino and Plymouth Distributors cannot be held to have become members of the conspiracy. *See United States v. United States Gypsum Co.,* 438 U.S. 422, 443 n.20, 98 S.Ct. 2864, 2877 n.20, 57 L.Ed.2d 1161 (1978) (intent to effectuate the object of a conspiracy is a necessary element of membership in the conspiracy); LaFave & Scott, *Criminal Law,* 470 (1972).[1] Yet, that is exactly what happened in the present case.

▮ The general rule that one who joins a conspiracy at any time before it ends may be held responsible for acts and agreements which took place before he joined, *e. g., United States v. Cimini,* 427 F.2d 129, 139 (6th Cir.), *cert. denied,* 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151 (1970), does not control when First Amendment rights are at stake. In most cases the illegal purposes of a federal conspiracy will be illegal in every federal jurisdiction. However, when the agreement alleged is one to distribute materials which constitute expression, the agreement may have both legal and illegal purposes depending on varying community

---

1. It is unusual to have conduct which is legal in one state and illegal in another. However, application of the community standards test leads to that result in the case of obscenity. The Supreme Court has recognized that material may be proscribed in one community but not in another, and that the courts must recognize the rights of the diverse communities. *Miller, supra,* 413 U.S. at 32–33, 93 S.Ct. at 2619, 2620.

standards.[2] Where one joins an ongoing undertaking to distribute expressive materials interstate he should not be convicted solely on the basis of agreements and overt acts which pre-dated his joining.[3] In order to avoid violation of such person's First Amendment rights, the government is required to prove either that he agreed to distribution of material to communities where it would be found obscene or permitted such future distribution to occur and failed to withdraw from the conspiracy.

The government relies primarily upon *Hamling v. United States, supra*, and *United States v. Sandy*, 605 F.2d 210 (6th Cir.), cert. denied, 444 U.S. 984, 100 S.Ct. 490, 62 L.Ed.2d 412 (1979), in arguing that Peraino and Plymouth could be tried and convicted under the Memphis community standards for agreements and acts which long pre-dated their involvement with "Deep Throat." Both cases are distinguishable. In neither case did any of the conspirators join the conspiracy after the acts occurred upon which venue was based. In *Hamling* conspiracy and venue questions were not at issue. In *Sandy*, this court held that the district court was not required to apply a multitude of local standards, depending on the distribution area which each distributor served. It stated:

> Having voluntarily chosen to enter a conspiracy of national scope, appellants limited their right to be tried according to the standards of the localities in which their operations are centered.

*Id.* at 218. The quoted language does not answer the question raised in the present case because all of the conspirators in *Sandy* were members at the time of the mailing of material into a community

where it was obscene by local standards. What *Sandy* establishes is that a member of a conspiracy may be tried and convicted under the community standards of a jurisdiction to which obscene materials are sent while he is a member of the conspiracy, though an individual conspirator need not have been personally involved in any of the venue-setting acts. This is so because every conspirator is liable for acts of other conspirators designed to further the purpose of conspiracy. In *Sandy* that purpose included distribution at the place of trial after each conspirator had joined. The only respect in which Peraino and Plymouth may be considered part of the ongoing conspiracy is that they continued the interstate distribution of "Deep Throat" after December 1974. However, there was no evidence that they agreed with anyone to distribute it to communities under whose standards it would be obscene. In fact, the only evidence is just the contrary.

The present case clearly is not controlled by *Sandy*. That case involved a "wheel" type conspiracy. The district court in *Sandy* found that individual conspirators who were subdistributors of a film ("spokes" of the wheel) owned by another distributor (the "hub" of the wheel) had agreed among themselves that they would forward the film to other communities if requested rather than return it to the "hub" after showing it. This agreement provided the "rim" of the wheel and tied all the conspirators together in a common enterprise. 605 F.2d at 216. This court held:

> Once the conspiracy *to which they belonged* was shown to have extended to and operated in Memphis, the defendants had no right to have the obscenity of the

---

2. This is not to say that the government must prove that the conspirators had actual knowledge that the film was obscene. The scienter sufficient to support a conviction is that they knew the general "character and nature" of the film. *Hamling, supra*, 418 U.S. at 123, 94 S.Ct. at 2910. We do hold that to convict one as a conspirator it is necessary to prove that a purpose of the conspiracy, at the time the conspirator was a member, involved a community, the standards of which were violated by the film.

3. Even under general conspiracy law where a conspirator is held responsible for acts of the conspiracy before he joined, it is still necessary to show an overt act of one of the conspirators "thereafter." *United States v. Thompson*, 533 F.2d 1006, 1009 (6th Cir.), cert. denied, 429 U.S. 939, 97 S.Ct. 353, 50 L.Ed.2d 308 (1976). In the present case, although overt acts were alleged after Peraino and Plymouth began distribution, none was shown to violate the standards of a community in which it took place.

film tried according to the community standards of other localities . . . .

*Id.* at 217 (emphasis added). Again, there was no issue in *Sandy* of the liability of one who joined the conspiracy after the last overt act in Memphis occurred. Insofar as Peraino and Plymouth are concerned, they were part of a "chain" rather than a "wheel" conspiracy. *Sandy* affirmed that each conspirator need not have personal contact with the *place* involved in the indictment. It did not concern the question of membership in the conspiracy at the *time* of the venue-setting act.

Though the reasons for its summary reversal are not clear, the Supreme Court's action in *Blucher v. United States, supra,* does raise a question which is pertinent to this case. In *Blucher* an Oregon postmaster requested a Wyoming postmaster to solicit materials by mail, under a false name, from an Oregon resident. There was no apparent reason for this strategem except the possibility that a Wyoming venire would apply a more restrictive community standard than one drawn from the Oregon district. The defendant was indicted under § 1461 and tried in Wyoming. His only contact with Wyoming consisted of mailing the materials to that state. Blucher was convicted and the Tenth Circuit, on the basis of *Hamling, supra,* affirmed with obvious misgivings. 581 F.2d 244 (1978). The Supreme Court vacated the judgment and remanded with directions that the indictment be dismissed. 439 U.S. 1061, 99 S.Ct. 823, 59 L.Ed.2d 27 (1979). Since similar government conduct—solicitation of materials by a postal inspector using a false name—had been approved by the Court in *Smith v. United States,* 431 U.S. 291, 97 S.Ct. 1756, 52 L.Ed.2d 324 (1977), it may be presumed that the government's blatant forum shopping, not present in *Smith* or *Hamling,* was the reason for reversing *Blucher.* If so, the present case is much stronger for reversal. The defendant in *Blucher* did mail into Wyoming matter which a jury there found to offend community standards. Peraino and Plymouth Distributors had nothing to do with "Deep Throat's" Memphis presence.

The government offered no proof of the community standards of any community to which Peraino and Plymouth caused "Deep Throat" to be sent. The court's instructions allowed the jury to apply standards of the jury's own community. Thus we do not reach the question of whether venue in the Western District of Tennessee could have been upheld by submitting to a jury of that district the issue of whether "Deep Throat" offended the standards of any other community—without regard to the standards of the trial district—to which these defendants agreed to transport the film.[4] There is serious doubt, however, that a jury of one district could properly determine the standards of another community solely on the basis of expert testimony. *See Hamling, supra,* 418 U.S. at 151 n.5, 94 S.Ct. at 2924 n.5 (dissenting opinion); *United States v. Elkins,* 396 F.Supp. 314, 316, 318 (C.D.Cal. 1975); *United States v. Mohney,* 476 F.Supp. 421 (D.Hawaii 1979). In *Mohney* the court stated:

> Inherent in *Miller* and *Hamling* is the idea that jurors are drawing on personal knowledge of their own community. While expert opinions may be relevant, jurors are completely free to disregard all expert testimony. If jurors cannot draw on personal knowledge, the idea of local community standards is a *totally* useless concept. A jury from the District of Hawaii cannot determine the community standards of the Eastern District of Michigan.

*Id.* at 426–27 (emphasis in original). This language points out the inherent difficulty of attempting to prosecute national conspiracies under the federal obscenity statutes in a single district.

One statement in the dissent requires a reply. The dissent states that "the stipula-

---

4. We recognize that the district court might "be at liberty to admit evidence of standards existing in some place outside of this particular district, if it felt such evidence would assist the jurors in the resolution of the issues which they were to decide." *Hamling, supra,* 418 U.S. at 106, 94 S.Ct. at 2901.

tion entered into by all the parties clearly established venue in the Western District of Tennessee." The stipulation was not so broad. As quoted in the opinion of the court in the companion cases (*United States v. Battista, et al.,* decided this date) the stipulation merely related to activities of the three grand juries of the Western District of Tennessee which investigated the showing of "Deep Throat" in Memphis. This investigation resulted in the indictments in this and the companion cases. It is clear that the appellants Peraino and Plymouth vigorously challenged venue throughout the district court proceedings. This is shown by a pretrial motion (appendix, p. 160) with supporting memorandum (appendix, p. 173) and a similar post-trial motion (appendix, p. 282). Further, in its instructions the district court advised the jury of the position of these appellants on this issue (appendix, p. 2700).

The convictions of Joseph Peraino and Plymouth Distributors, Inc. are reversed with directions to dismiss the indictments against them.

WEICK, Circuit Judge, dissenting:

I respectfully dissent.

Joseph Peraino and Plymouth Distributors, Inc. contend principally that the district court did not have venue jurisdiction over them since they had joined the conspiracy some eight months after the obscene film Deep Throat had been shown in Memphis. They argue that if each district where the film previously had been distributed had jurisdiction that this would subject them to varying community standards the details of which they had no knowledge and in violation of their constitutional rights. They offered no proof, however, of different community standards except self-serving statements and opinions from their own past employees. Here the conspiracy in which these defendants joined was of national scope even though they later restricted the territory in which they operated. *Hamling v. United States,* 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *United States v. Sandy,* 605 F.2d 210 (6th Cir.

1979), *cert. den.,* 444 U.S. 984, 100 S.Ct. 490, 62 L.Ed.2d 412 (1979). These defendants never withdrew from the conspiracy.

Their contentions conflict with the fundamental law of conspiracy. A conspirator need not join a conspiracy at its inception, in order to become liable as a conspirator. When he joins the conspiracy, he is bound by the prior acts and statements of other conspirators made in furtherance of the common objective which, in this case, was the distribution of an obscene movie Deep Throat in interstate commerce. *United States v. Cimini,* 427 F.2d 129 (6th Cir. 1970), *cert. den.,* 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151 *reh. den.,* 400 U.S. 984, 91 S.Ct. 364, 27 L.Ed.2d 396 (1971). These defendants as the jury found had full knowledge of the details of the obscene film and of community standards. The government, however, was not required to prove that each conspirator was familiar with each and every detail of the conspiracy. *United States v. Mishkin,* 317 F.2d 634 (2nd Cir. 1963), *cert. den.,* 375 U.S. 827, 84 S.Ct. 71, 11 L.Ed.2d 60 (1963). From the time that the agreement is entered into, the crime of conspiracy is a continuing crime from its inception to its conclusion. Prosecutions for conspiracy may be made either where the conspiracy was formed or where any overt act in furtherance of the conspiracy was committed. *United States v. Downing,* 51 F.2d 1030 (2nd Cir. 1931). Even an overt act not pleaded in the indictment may be used. *Brown v. Elliott,* 225 U.S. 392, 32 S.Ct. 812, 56 L.Ed. 1136 (1912); *United States v. Downing,* 51 F.2d 1030 (2nd Cir. 1931). Only slight evidence is necessary to connect a defendant with a conspiracy. *United States v. Chambers,* 382 F.2d 910 (6th Cir. 1967).

The stipulation entered into by all of the parties clearly established venue in the Western District of Tennessee. These defendants are bound by their stipulation.

Joseph Peraino was no novice. As the majority concedes, Peraino took over the distribution of the film in December 1974 and moved the distribution center from Florida to New Jersey. He organized

Plymouth Distributors, Inc. for the purpose of distributing the film in Pennsylvania, Connecticut, New Jersey and Maine. The jury was fully justified in finding these defendants knowledgeable in every particular. I find no basis for carving out an exception to the well established rule of conspiracy which would exempt these defendants from the consequences of their knowledgeable acts. I would affirm these convictions.