**UNITED STATES of America, Plaintiff,**

**v.**

**Douglas HILL, Defendant.**

**No. 92–1551–CIV.**

United States District Court,
S.D. Florida.

Dec. 3, 1992.

Rick Carey, Miami, FL, for U.S.

Michael Hursey, Michael Hursey, P.A., Ft. Lauderdale, FL, for Hill.

## *MEMORANDUM OPINION AND ORDER GRANTING NEW TRIAL*

GRAHAM, District Judge.

THIS CAUSE came before the Court upon Defendant, Douglas Hill's Motion for Habeas Corpus Relief. For the reasons stated in the opinion below, Defendant's Motion is granted.

## I. BACKGROUND

### A. Procedural History

On October 17, 1991, Douglas Hill ("Defendant") was convicted of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Defendant was sentenced on June 26, 1992 and subsequently filed the subject motion pursuant to 28 U.S.C. § 2255, alleging that he was denied effective assistance of counsel because his trial counsel failed to call two crucial witnesses. The facts relevant to this motion are recounted briefly below.

### B. Facts at Trial

Alcohol, Tobacco and Firearms ("ATF") agents set up an undercover storefront operation to buy illegal weapons and stolen property. In February 1991, Maggie Moore ("Moore") entered the storefront in order to sell an old rifle given to her by her boyfriend. A government agent present on that day testified at trial that Defendant had carried the firearm into the store from Moore's car. A videotape showed Defendant carrying the gun to a counter where an undercover ATF agent stood. After Moore negotiated the sale of the rifle, Defendant, at the request of an ATF agent, carried it to a couch a few feet away from the counter. Based upon these facts, the government charged Defendant with possession of a firearm by a convicted felon. Defendant did not testify or present any other testimony at trial.

### C. Facts at Evidentiary Hearing

This court conducted an evidentiary hearing on June 26, 1992 following Defendant's Motion for New Trial.[1] At the hearing, Moore testified that she asked Defendant to accompany her to the storefront to sell the gun. June 26, 1992 Hearing Transcript at 4. Moore went on to state that Defendant and his girlfriend (Alice Snow) got into the car with her and she drove to the storefront. Moore testified that a man outside the storefront told Defendant to take the rifle out of the car and take it into the store for her.[2] Moore testified that although Defendant's trial counsel had contacted her by telephone, she had not been subpoenaed to appear at trial, nor questioned concerning her knowledge of the facts in this case.[3]

At the evidentiary hearing, Defendant proffered the testimony of Alice Snow

---

1. Defendant's Motion for New Trial was denied because it was untimely under Fed.R.Crim.Proc. 33 and because the evidentiary hearing revealed that there was no newly discovered evidence. The subject Motion for Habeas Corpus Relief followed.

2. Moore testified as follows:

   A: When we got there, when we got to the warehouse he said "Pull on up here."
   Q: Who said "Pull on up here"?
   A: Bill. He said his name was Bill, but his name was William Stringer.
   Q: All right. Was he outside of the building?
   A: Yes, he was.
   Q: Tell me what happened.
   A: He said "What you got?" I said "I got"— well, it wasn't no shotgun. It was a rifle. I said it was a rifle.
   He said "Well, Doug"—when he pulled on up he said "Doug, take it out for Ms. Moore and bring it in", and Doug, he took it out and took it in for me ... June 26, 1992 Hearing Transcript at 5–6.

3. Moore testified as follows:

   Q: Tell me about the first time when someone came out and you told them you had problems because of your grandchildren.
   A: Nobody came out.
   Q: Did they call you?
   A: Someone—this was a lady. This was way back. This was a lady came, at least called me, and she said she was Douglas Hill's lawyer, and she told me that I was—that she was going to subpoena me to come to court. So, I didn't know. I thought she was the lawyer today, because she was a lady that called me before, but I never seen her.
   Q: Did you actually receive a subpoena?
   A: Yes, I did. Two weeks ago, a week ago.
   Q: Before two weeks ago.
   A: No, no.
   Q: Did you receive a subpoena before October?
   A: No.
   Q: You just talked to her on the phone?
   A: Yes, I did.
   Q: Did you tell her what you told me today, or were you asked those questions?
   A: She didn't ask me. She threatened me if I didn't come to court, she was going to lock me up.
   Q: And you never received a subpoena?
   A: No, I didn't.
   Q: And you were never asked questions about your knowledge of this case?
   A: No, I wasn't.

("Snow"), which showed Snow would testify, *inter alia*, that she was never contacted by trial counsel and that the agent outside the storefront told Defendant to carry the gun into the storefront.

## II. DISCUSSION

Defendant asserts that because Moore negotiated the sale of the rifle and because she witnessed the government agent directing Defendant to bring the gun into the store, Moore was a crucial witness. Further, Defendant argues that Snow was a crucial witness because, in addition to accompanying Defendant and Moore, she also observed other key events. Defendant argues that trial counsel's failure to present these two witnesses at trial severely prejudiced the defense and amounts to ineffective assistance of counsel.

### A. Ineffective Assistance of Counsel

█ In order to prevail on a claim for ineffective assistance of counsel, a defendant must meet the two-prong test established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Court in *Strickland* held that a defendant has established ineffective assistance when he shows: 1) "that counsel's performance was deficient", i.e., that counsel made errors so serious that he or she failed to provide the "counsel" guaranteed by the Sixth amendment; and 2) "that the deficient performance prejudiced the defense", i.e., that counsel's errors were so serious that the defendant was deprived of a fair trial with a reliable outcome. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. Unless a defendant makes both showings, it cannot be

June 26, 1992 Hearing Transcript at 8–9.

4. Specifically, government counsel stated the following:

The Court: Mr. Stamm, I must say, based on the testimony I have heard today, I am uncomfortable with this defendant having received ineffective assistance of counsel.
Let me Hear from you.
Mr. Stamm: Yes, Your Honor.
From the limited review of the record and hearing the one side of the story, I will concede that this doesn't sound like a case in a manner that I would want to handle it representing a client.

said that the conviction resulted from a breakdown in the adversarial process which renders the result unreliable. *Id.*

### 1. Deficient Performance of Counsel

█ The Court in *Strickland* defined deficient performance as that which falls below the standard of reasonableness established by prevailing professional norms. *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2065. The Court declined to provide more specific guidelines, stating the Sixth Amendment does not specify particular requirements of effective assistance. *Id.* Instead, the reasonableness of counsel's conduct must be judged on the facts of the particular case as they existed at the time of counsel's conduct. *Id.* at 690, 104 S.Ct. at 2066.

█ The government argues that trial counsel's decision not to call Moore and Snow as witnesses at trial does not show counsel's representation fell below an objective standard of reasonableness. However, during the June 26, 1992 evidentiary hearing conducted by the court, counsel for the government conceded that given a limited review of the facts of this case, he would not have handled Defendant's case in the manner employed by trial counsel.[4]

At the request of government counsel, this court scheduled a continuation of the evidentiary hearing to allow the government the opportunity to secure Defendant's trial counsel for testimony. July 17, 1992 Hearing Transcript at 3. Defendant's trial counsel failed, however, to attend this hearing and the hearing ended without the government presenting any testimony on the issue of trial counsel's effectiveness. While this court is

The one thing I would note, however, in a normal 2255 proceeding, either in a pro se fashion or where a new lawyer had come in, one thing the Government and myself would always do in attempting to defend the conviction or respond to the motion would be certainly to make an effort to contact the lawyer who handled the case below and hear their side of the story, find out what efforts were taken, what steps, if any, what they were told by their client, what the witness might have told them. Often, they may sometimes give a different account of how a witness responded to them or what a defendant told them.
June 26, 1992 Hearing Transcript at 9–10.

aware that Defendant must show by a preponderance of the evidence that he received ineffective assistance of counsel and that he suffered actual and substantial prejudice as a result, *Wiley v. Wainwright,* 709 F.2d 1412, 1413 (11th Cir.1983), the government did not take advantage of its opportunity to present evidence in rebuttal.

Based upon the evidence presented by Defendant, the statements made by government counsel during the June 26, 1992 evidentiary hearing, and the failure of the government to present evidence in rebuttal, this court finds Defendant's trial counsel's performance was deficient. Having determined that Defendant has met the first prong for showing ineffective assistance of counsel, the court must now address the question of prejudice to Defendant.

### 2. Prejudice to Defendant

█ In order to prove that a defendant has been prejudiced by counsel's deficient performance, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

The government argues that even if Moore and Snow had been called as trial witnesses, their testimony would not have refuted the evidence presented by the government at trial—that Defendant possessed the firearm on the date in question. The government asserts that the fact that an undercover agent outside the storefront instructed Defendant to carry the gun into the store does not negate possession of the gun by Defendant and does not support a conclusion that Moore and Snow's testimony would probably have produced a different verdict.

The government's position ignores key facts important in this analysis. One of these facts is that the government agent knew Defendant and knew he was a convicted felon, yet instructed him to carry the gun

into the storefront. If Defendant's trial counsel had presented Moore and Snow's testimony, Defendant may have been able to argue the defense of entrapment to the jury.

█ Generally, "entrapment occurs when the government induces the commission of a crime by one not predisposed to commit it." *United States v. Bagnell,* 679 F.2d 826, 834 (11th Cir.1982), *cert. denied,* 460 U.S. 1047, 103 S.Ct. 1449, 75 L.Ed.2d 803 (1983). Entrapment is an affirmative defense which focuses on a defendant's predisposition to commit a crime. As such, the defendant must present evidence "that the government's conduct created a substantial risk that the offense would be committed by a person other than one ready to commit it." *Bagnell,* 679 F.2d at 834, *quoting United States v. Dean,* 666 F.2d 174, 180 (5th Cir. 1982), *cert. denied,* 456 U.S. 1008, 102 S.Ct. 2300, 73 L.Ed.2d 1303 (1982). The key focus when entrapment is at issue is the predisposition of the defendant. *United States v. Webster,* 649 F.2d 346, 348 (5th Cir.1981) (en banc) [5].

Here, the facts revealed during the June 26, 1992 evidentiary hearing establish that Defendant had no predisposition to commit the crime in question. Defendant was present at the storefront only because Moore asked him to accompany her to there to sell the gun. Once they arrived at the storefront, the government agent, who knew Defendant, instructed Defendant to carry the gun inside for Moore. For the government agent to instruct Defendant to carry the gun inside, then to later charge Defendant for possession of firearm by a convicted felon suggests Defendant may have had a valid basis for an entrapment instruction had this evidence been introduced at trial through the testimony of Moore and Snow. If such an instruction had been given, there is a reasonable probability that the outcome of Defendant's trial may have been different. Further, the failure to call these witnesses at trial strongly suggests that the outcome at Defendant's trial was unreliable.

█ Additionally, Moore and Snow's testimony may have had some bearing on the

---

**5.** Pursuant to *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), all decisions entered by the former Fifth Circuit prior to the close of business on September 30, 1981 are binding on the Eleventh Circuit and all district courts within the Eleventh Circuit.

possession element of the crime for which Defendant was convicted. For the purposes of § 922(g)(1), possession may be either actual or constructive. *United States v. Woodall,* 938 F.2d 834, 838 (8th Cir.1991). Actual possession occurs when an object is in the immediate possession or control of an individual. Constructive possession exists when a person does not have actual possession, yet knowingly has the power to and the intention at any given time to exercise dominion and control over an object, either directly or through others. *United States v. Craven,* 478 F.2d 1329 (6th Cir.1973), *cert. denied,* 414 U.S. 866, 94 S.Ct. 54, 38 L.Ed.2d 85 (1973); *United States v. Virciglio,* 441 F.2d 1295 (5th Cir.1971).

Based upon the definition of possession, the jury in this case had the right to hear the testimony of Moore and Snow concerning the issue of possession in order to determine whether Defendant possessed the gun within the meaning of § 922(g)(1). This court finds that trial counsel's failure to present testimony on this issue prejudiced Defendant.

### III. CONCLUSION

Based upon the foregoing discussion, this Court finds Defendant was denied effective assistance of counsel and is entitled to a new trial. Accordingly, Defendant's Motion for Habeas Corpus Relief is GRANTED. This cause shall be set for new trial by separate order.