[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-10891
Non-Argument Calendar
_____

D.C. Docket No. 8:13-cr-00026-RAL-TGW-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KENYON WILLIAMS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(April 2, 2015)

Before WILLIAM PRYOR, JULIE CARNES and FAY, Circuit Judges.

PER CURIAM:

Kenyon Williams appeals his convictions and sentence of 180 months of imprisonment for one count of conspiracy to make false claims and commit wire fraud, 18 U.S.C. § 371, two counts of wire fraud, *id.* §§ 1343, 2, and two counts of aggravated identity theft, *id.* §§ 1028A(a)(1), 2. Williams challenges the denial of his motions for a change of venue and for an acquittal on the charge of conspiracy. Williams also challenges the enhancement of his sentence for obstruction of justice; for abusing a position of trust; for causing a loss between $1 and $2.5 million; and for having 250 or more victims. Williams also argues that the district court erroneously enhanced his sentence for aggravated identity theft. We affirm.

Williams does not argue that venue was improper in Florida. Williams instead argues that he was entitled to a change of venue to prevent prejudice, *see* Fed. R. Crim. P. 21(a), and to promote the convenience of the parties and witnesses and the interest of justice, *id.* 21(b). We disagree.

The district court did not abuse its discretion when it denied Williams's motion for a change of venue to San Diego, California. Williams argues that he was prejudiced because all his witnesses could not afford to travel from his hometown of San Diego to his trial in Tampa, Florida, but Rule 21(a) concerns juror prejudice against the defendant, not the costs of trial. *See United States v. Campa*, 459 F.3d 1121, 1143 (11th Cir. 2006). And Williams fails to identify any witnesses that he would have called had the venue been different, nor does he

2

explain how he was prejudiced by the absence of their testimony. Williams also argues that he suffered a financial hardship by being tried far from home, but "[a] criminal defendant has no right to be tried in the place of his domicile, . . . [nor are his] concerns about the expense and inconvenience of being tried away from home" dispositive in determining venue, *United States v. Bagnell*, 679 F.2d 826, 832 (11th Cir. 1982). Florida was a convenient venue under Rule 21(b) because Williams's coconspirators received his telephone calls and text messages in Florida and used the means of identification of numerous victims to prepare fraudulent tax returns there. *See United States v. Kopituk*, 690 F.2d 1289, 1321–22 (11th Cir. 1982). Florida was also a more convenient venue for the government because its witnesses, Alesia Spivey and Carlista Hawls, who had conspired with Williams, and its exhibits for trial were located there. *See id.* at 1322.

The district court did not err by denying Williams's motion for an acquittal for the charge of conspiracy. Taken in the light most favorable to the government, copies of taxpayer records and fraudulent tax returns prepared by Williams, and the testimony of two agents of the Internal Revenue Service, two of Williams's former clients, and his coconspirators proved that Williams participated in a conspiracy to defraud the United States by filing false tax returns. *See* 18 U.S.C. §§ 371, 1343; *United States v. Hasson*, 333 F.3d 1264, 1270 (11th Cir. 2003). Williams, a schoolteacher who had formerly prepared tax returns for Jackson Hewitt, contacted

Spivey and Hawls to learn what fabricated amounts to use on returns to generate refunds of between eight and ten thousand dollars. When Spivey and Hawls traveled from Florida to California to help Williams prepare fraudulent returns, he gave the women a list that he had titled the "K Will list" consisting of the names, dates of birth, and social security numbers of 20 to 25 persons and also a stack of blood donor cards containing the identification information for several members of the military. The women used the K Will list to help prepare fraudulent returns, many of which included Schedule C forms patterned after a form filed by Williams's wife, and the tax refunds were deposited in Williams's bank account, accounts connected to Spivey, or onto prepaid debit cards. Agents of the Service discovered Williams's fingerprints on one of the donor cards; a copy of the K Will list in a personal file on Williams's computer; and copies of correspondence and taxpayer records addressed to other persons inside Williams's garage. The tax returns prepared by Williams stated falsely that they had been prepared by the taxpayer; claimed false credits for education and deductions for interest payments; and falsely reported amounts withheld by employers, education expenses, and the payment of penalties for making withdrawals from individual retirement arrangements. Agents also obtained recordings of conversations and text messages between Williams, his clients, and his coconspirators about the K Will list, the use of fake addresses, the receipt of tax refunds, and his demands to share refunds.

4

Although Williams testified that he was innocent, the jury was entitled to discredit his testimony and treat it as substantive evidence of his guilt. *See United States v. Bacon*, 598 F.3d 772, 775–76 (11th Cir. 2010). Ample evidence supported Williams's conviction.

The district court did not clearly err when it found that Williams obstructed justice. A defendant is subject to a two-level increase of his offense level if he "willfully obstruct[s] or impede[s], or attempt[s] to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the . . . offense of conviction." United States Sentencing Guidelines Manual § 3C1.1 (Nov. 2013). Williams sent an email to his clients attempting to influence them not to cooperate with investigators. *See id.* § 3C1.1 cmt. n.4(A); *United States v. Amedeo*, 370 F.3d 1305, 1319–20 (11th Cir. 2004). Williams stated that he was being investigated wrongfully; he stressed that the clients were not required to talk to investigators; and he stated that federal agents intended to "scare [clients] to talk bad against [him]." Williams also gave patently false explanations for his conduct during trial and his sentencing hearing, in what the district court described as "one of the finest displays of perjury [that it had] ever seen." *See* U.S.S.G. § 3C1.1 cmt. n.4(B); *United States v. Vallejo*, 297 F.3d 1154, 1168–69 (11th Cir. 2002). Additionally, Williams flagrantly violated a pretrial release order that restricted him to filing his personal tax return and that prohibited

him from accessing the personal identification information of other persons by filing 380 tax returns, some of which were fraudulent.

The district court also did not clearly err by finding that Williams abused a position of trust. If a defendant "abuse[s] a position of public or private trust, or use[s] a special skill, . . . [to] facilitate[] the commission of [an] offense," he is subject to a two-level increase of his offense level. U.S.S.G. § 3B1.3. That enhancement applies when the defendant "exceeds or abuses the authority of his . . . position in order to obtain, transfer . . . or use without authority, any means of identification." *Id.* § 3B1.3 cmt. n.2(B). Williams abused a position of trust when he prepared fraudulent tax returns using personal identification information that his tax clients provided for the preparation of their tax returns. Williams argues that the enhancement is inapplicable to him because he was not a licensed tax preparer, but the district court increased his sentence based on his abuse of a position of trust, not for his use of a special skill.

The district court also did not clearly err in attributing to Williams a loss amount of $2,426,511.33. *See id.* § 2B1.1(b)(1)(I). Williams argues that the district court was bound by the lesser amount alleged in the indictment, but a district court is obligated to make an independent finding of the amount of loss. *See United States v. Foley*, 508 F.3d 627, 633 (11th Cir. 2007). Williams argues that he was responsible only for the loss amount related to the K Will list, but he was

responsible for the monetary losses that he caused and those that he intended to cause in furtherance of the conspiracy to file false tax returns, U.S.S.G. §§ 1B1.3(a)(1), 2B1.1 cmt n.3. In addition to the losses attributable to the K Will list, Williams was responsible for the intended losses from tax returns that he filed in 2011 that claimed false deductions and generated unwarranted tax refunds and for the intended losses from the false tax returns that he filed in violation of the pre-trial order. Williams acknowledged during his sentencing hearing that he had "no evidence to suggest" that the amounts attributable to those wrongful filings were inaccurate, and he does not contest the calculation of the amount on appeal.

The district court also did not clearly err by enhancing Williams's sentence for having 250 or more victims. *See id.* § 2B1.1(b)(2)(C). Williams argues that he is innocent and did not have any victims, but the jury found Williams guilty of conspiring to file fraudulent tax returns and of aggravated identity theft. In so doing, the jury found that Williams used unlawfully or without authority the means of identification of other persons. *See id.* § 2B1.1 cmt. n.4(E). Williams argues that the number of victims should be limited to the seven individuals alleged in his superceding indictment, but "regardless of what motivated the [grand] jury . . ., the [S]entencing Guidelines require a district court, at the sentencing stage, to make independent findings establishing the factual basis for its Guidelines calculations." *United States v. Hamaker*, 455 F.3d 1316, 1338 (11th Cir. 2006).

7

Williams argues that the district court erred by enhancing his sentence for aggravated identity theft, but his argument fails. The advisory guidelines prohibit only the application of "any specific offense characteristic for the transfer, possession, or use of a means of identification when determining the sentence for" aggravated identity theft. U.S.S.G. § 2B1.6 cmt. n.2. The district court was permitted to enhance Williams's sentence for the production of unauthorized access devices, *see id.* § 2B1.1(b)(11)(B)(i), which involves conduct different from that prohibited under section 2B1.6, *see United States v. Charles*, 757 F.3d 1222, 1227 (11th Cir. 2014). Section 2B1.6 also does not bar the application of enhancements predicated on the number of Williams's victims, *see* U.S.S.G. § 2B1.1(b)(2)(C), and the amount of loss that Williams intended to cause, *see id.* § 2B1.1(b)(1)(I).

We **AFFIRM** Williams's convictions and sentence.